```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LYNN MARIE CACI,

                  Plaintiff,      6:18-cv-06533-MAT
                                  DECISION AND ORDER
                  -v-

Commissioner of Social Security,

                  Defendant.
_____
```

## INTRODUCTION

Plaintiff Lynn Marie Caci ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Docket No. 1. The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Docket Nos. 9, 12, 13. For the reasons set forth below, Defendant's motion for judgment on the pleadings (Docket No. 12) is granted, and Plaintiff's motion (Docket No. 9) is denied.

## PROCEDURAL BACKGROUND

On November 19, 2014, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of May 10, 2011, due to "[l]eft and right knee issues (no cartilage in knees)

[and] [d]epression." Administrative Transcript ("T.") 10, 80, 89, 98-99. The claims were initially denied on April 9, 2015. T. 10, 104-09. At Plaintiff's request, a hearing was conducted on April 7, 2017, by administrative law judge ("ALJ") Kenneth Theurer. T. 10, 26-60. At her hearing, Plaintiff amended her alleged onset date of disability to June 18, 2013. *Id*. The ALJ issued an unfavorable decision on May 18, 2017. T. 7-19. Plaintiff appealed the decision to the Appeals Council, which denied her request for review on May 15, 2018, making the ALJ's decision the final determination of the Commissioner. T. 1-3. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ initially found that Plaintiff met the insured status requirements of the Act through September 30, 2019. T. 12. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 18, 2013, the amended alleged onset date. *Id*.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: a bilateral knee issue, thyroiditis, and obesity. T. 12-13. The ALJ further found that

Plaintiff's medically determinable impairment of depression was non-severe. T. 13-14.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 14. The ALJ specifically considered Listing 1.02 (major dysfunction of a joint) in making this determination. *Id.*

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except: "she can only lift ten pounds occasionally. The claimant can never kneel, crawl or climb ladders/ropes/scaffolds; but she can rarely (more than never, less than occasional) climb stairs/ramps; and she can occasionally balance, stoop and crouch. She requires the use of a cane to ambulate; however, she retains the ability to carry a small object, such as a file, in her free hand. The claimant may alternate from a seated to a standing position - or vice versa - two times per hour, for no more than five minutes, while remaining on task. The claimant is limited to simple, routine and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related decisions, with few, if any, workplace changes." T. 15.

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work.  T. 17.

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of ticket taker, document preparer, and order clerk, food and beverage.  T. 17-18.  The ALJ accordingly found that Plaintiff was not disabled as defined in the Act.  T. 18-19.

## **SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error.  42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record.  *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive").  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted).  The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or

-4-

detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ relied upon a vague opinion offered by Elke Lorensen, M.D., a consultative examiner. *See* Docket No. 9-1 at 2, 15-19. Plaintiff argues that in formulating the physical RFC, the ALJ relied exclusively on Dr. Lorensen's opinion, which did not provide a functional assessment of Plaintiff's impairments. *Id*. at 16-17. Plaintiff contends that, as a result, the ALJ failed to develop the medical record and based the RFC on his own lay opinion. *Id*. at 17-19.

"When assessing a disability claim, an ALJ has the responsibility of determining a claimant's RFC based on all of the relevant medical and other evidence of record." *Mack v. Commissioner*, No. 1:18-cv-00265-MAT, 2019 WL 1994279, at *4 (W.D.N.Y. May 6, 2019) (citations omitted); *see also* 20 C.F.R. § 416.927(d)(2). Further, "the ALJ is required to articulate the reasons for the RFC determination, which 'must include a narrative discussion describing how the evidence supports each conclusion.'"

*Quinto v. Berryhill*, No. 3:17-cv-00024(JCH), 2017 WL 6017931, at *5 (D. Conn. Dec. 1, 2017) (quoting SSR 96-8p, at *7)).

An RFC finding need not correspond to any particular medical opinion; rather, the ALJ must weigh and synthesize all evidence available to render an RFC finding that is consistent with the record as a whole. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). However, "[b]ecause an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hilsdorf v. Commissioner*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). Accordingly, "[a]n ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC." *Quinto,* 2017 WL 6017931, at *12 (citations omitted).

Dr. Lorensen examined Plaintiff on March 25, 2015. T. 393-96. He observed the following regarding Plaintiff's general appearance, gait, and station:

> The claimant appeared to be in no acute distress. Gait is not normal. She favors her right leg minimally to mildly. Declines walking on heels and toes. Declines squatting. Stance normal. Used no assistive devices.

> Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty.

T. 394. A musculoskeletal examination showed the following:

> Cervial spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine. Lumbar spine flexion 50 degrees, extension and lateral flexion 20 degrees bilaterally. SLR negative bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Right hip flexion 60 degrees, left 50 degrees. Right knee flexion 100 degrees, left 75 degrees. Full ROM of ankles bilaterally. No evident subluxations, contractures, ankylosis, or thickening. Joints stable and nontender. No redness, heat, or effusion noted. There is moderate swelling of the left knee. No trigger points evident.

T. 395. Dr. Lorensen offered the following Medical Source Statement:

> There are mild limitations standing and ambulating presumably secondary to left knee pain. There are moderate restrictions bending, lifting, and reaching. Marked restrictions kneeling and squatting. The claimant should avoid smoke, dust, and other respiratory irritants.

T. 396.

The ALJ based Plaintiff's RFC, in part, on the opinion offered by Dr. Lorensen, which he gave "great weight." T. 15-16. The ALJ found that Dr. Lorensen's opinion was "consistent with other records that show only mild-to-moderate degenerative issues with regard to the knees." T. 15. The ALJ also noted that Dr. Lorensen had both "professional expertise," and the opportunity to examine Plaintiff. T. 15-16.

The assessed physical RFC is consistent with Dr. Lorensen's opinion. For example, the RFC's limitation to sedentary work, and that Plaintiff requires a cane to ambulate, is consistent with Dr. Lorensen's opinion that Plaintiff has mild limitations standing and ambulating. Further, the RFC's limitation for lifting up to ten pounds occasionally is consistent with Dr. Lorensen's opinion that Plaintiff has moderate limitations for lifting. The RFC's limitation that Plaintiff can "never" kneel, crawl, or climb ladders/ropes/scaffolds, can "rarely" climb stairs and ramps, and can "occasionally" balance, stoop, and crouch, is consistent with Dr. Lorensen's opinion that Plaintiff has marked limitations for kneeling and squatting and moderate restrictions for bending. The restrictions contained in the RFC are also consistent with Dr. Lorensen's examination of Plaintiff, during which he found that Plaintiff favored her right leg minimally to mildly, and Plaintiff declined walking on her heels and toes, as well as squatting.

Plaintiff contends that Dr. Lorensen's opinion is vague and does not provide a functional assessment because he used the terms "mild," "moderate," and "marked" to describe Plaintiff's restrictions. *See* Docket No. 9-1 at 16-17 ("The use of the terms 'minimal-to-mild' to describe the level of exertion that Plaintiff cannot perform is so vague as to render the assessment useless for purpose of evaluating Plaintiff's residual functional capacity.'"). However, "such terminology in a consultative opinion is not

necessarily without utility." *Antoine T. v. Commissioner*, No. 3:18-CV-0232(CFH), 2019 WL 2327937, at *10 (N.D.N.Y. May 31, 2019); *see also Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014) ("whether an administrative law judge's reliance on a consultative examiner's vague opinions is reversible error is contextual rather than *per se*. Reviewing courts must weigh the impact of [a] vague opinion in its unique factual circumstance.") (alterations in original). For example, a consultative examiner's use of such terminology is not impermissibly vague when the conclusion is "well supported by his extensive examination." *Monroe v. Commissioner*, No. 5:15-CV-1235(GTS/WBC), 2016 WL 7971330, at *8 (N.D.N.Y. Dec. 29, 2016) (internal quotations and citations omitted), *adopted*, 2017 WL 318838 (N.D.N.Y. June 23, 2017); *see Melton v. Colvin*, No. 13-CV-6188(MAT), 2014 WL 1686827, at *12-13 (W.D.N.Y. Apr. 29, 2014) (ALJ's reliance on opinion of consultative examiner, who opined that Plaintiff had "mild to moderate" limitations in various exertional activities, was proper, because "[t]he ALJ discussed, at length, Plaintiff's physical health history . . . and specifically explained how [the consultative examiner's] opinion with respect to Plaintiff's functional limitations was consistent with [the consultative examiner's] examination observations."). Further, "medical source statements from consultative examiners which provide vague language may be rendered 'more concrete' by the facts

-9-

in the underlying opinion and other opinion evidence in the record." *Monroe*, 2016 WL 7971330, at *8 (citations omitted).

Here, Dr. Lorensen's opinion regarding Plaintiff's ability to stand, ambulate, bend, lift, reach, kneel, and squat is supported by his in-person, physical examination of Plaintiff. *See* T. 393-96. Further, the ALJ identified specific diagnostic imaging studies of Plaintiff's knees supporting the limitations assessed by Dr. Lorensen and the RFC. These imaging studies showed "modest issues," and "mild-to-moderate" degenerative changes. *See* T. 16; *see also* T. 420 (August 12, 2013 treatment note by Dr. Kaempffe, explaining that "[r]adiographs of the knee done today show mild PF and medial compartment joint space narrowing," and noting that Plaintiff's "history and examination are consistent with mild arthrosis."); T. 422 (August 12, 2013 imaging study showing "[n]o evidence of fracture, subluxation or destructive lesion of the knee," and "mild to moderate bilateral degenerative changes[.]"). The ALJ further explained that while Plaintiff had surgery in the remote past, she did not have any knee surgeries during the period in question, and has generally followed a conservative course of treatment. T. 16.

Because the opinion evidence offered by Dr. Lorensen, along with his examination and other evidence in the record, is not vague and supports the RFC, the ALJ was not required to further develop the record. *See Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir.

1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)); *Varalyn B. v. Commissioner*, No. 5:18-CV-978(ATB), 2019 WL 5853388, at *5 (N.D.N.Y. Nov. 8, 2019) ("Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the claimant's RFC."); *Rivera v. Berryhill*, No. 3:18CV143(AWT), 2019 WL 1292490, at *4 (D. Conn. Mar. 21, 2019) ("the ALJ was not required to develop the record further because the evidence was complete and detailed enough to make a determination as to disability."). Here, Plaintiff was referred for physical and mental consultative examinations, so that the Commissioner could properly assess her RFC. *See* T. 393-96 (internal medicine consultative examination), T. 397-400 (psychiatric consultative examination). Further, the record contains over 300 pages of medical records. *See* T. 304-619. Plaintiff does not specifically identify any evidence that is missing from the record, beyond her argument that Dr. Lorensen's opinion is impermissibly vague. Accordingly, remand is not warranted on this basis.

Further, the ALJ's analysis of the opinions offered by Charles Jordan, M.D. and Steven Hausmann, M.D., was proper. The ALJ

acknowledged Dr. Jordan's opinion that Plaintiff was unable to perform her past relevant work, and Dr. Hausmann's opinion regarding Plaintiff's scheduled loss of use for her workers' compensation claim. *See* T. 17, 607-14, 616-19. The ALJ gave these opinions "little weight," as they were "based on a different legal standard, and neither doctor provided a function-by-function analysis." T. 17. The Court has reviewed the opinions offered by Drs. Jordan and Hausmann, and agrees with the ALJ's analysis, particularly because neither opinion is not inconsistent with Plaintiff's work-related functional limitations. Dr. Jordan found in July 2012 that Plaintiff's "current degree of disability [was] marked partial"; she had not reached "maximum medical improvement," and it could take up to one year for her to reach that stage; and Plaintiff was "unable to perform her usual duties as an unloader and stocker since she has difficulty with prolonged standing, walking, bending, and lifting." T. 613. Similarly, in May 2013, Dr. Hausmann assessed a loss of use for Plaintiff's knee and leg, including "7.5% for loss of knee flexion and 10% for patella chondroplasty resulting in a schedule loss of use of 17.5% of the left leg." T. 619. Because these opinions speak only to Plaintiff's alleged disability and do not provide a useful assessment of her functional limitations, the ALJ properly afforded them only little weight. *See Jenkins v. Commissioner*, No. 18-CV-6092-FPG, 2019 WL 483838, at *4 (W.D.N.Y. Feb. 7, 2019) (ALJ

properly afforded little weight to medical opinions because they were based on a workers' compensation standard and did not provide a function-by-function assessment of the plaintiff's ability to perform specific work-related activities); *see also Lachowski v. Saul*, No. 18-CV-0179L, 2019 WL 4894324, at *2 (W.D.N.Y. Oct. 2, 2019) ("While Dr. Campbell was apparently one of plaintiff's treating physicians, the ALJ's rejection of his opinion as to the ultimate issue of disability was manifestly proper, as that determination is reserved for the Commissioner.").

Plaintiff also contends that the ALJ failed to weigh the opinion of Plaintiff's orthopedic specialist, Dr. Smallman. *See* Docket No. 9-1 at 18. Plaintiff references Dr. Smallman's statements contained in a March 5, 2013 treatment note, that Plaintiff "simply has not done well and continues to have significant symptoms," that she was "totally disabled with respect to this [knee] condition," and "[c]ertainly she will not be able to return to her previous job." *Id.*; *see also* T. 345 ("I think that she can be considered totally disabled with respect to this condition. Certainly she will not be able to return to her previous job. In fact, her lifestyle would involve sedentary activities only."). The Court notes that the treatment note is from an examination that occurred on March 5, 2013, prior to Plaintiff's disability onset date of June 18, 2013. Further, Dr. Smallman's statements, along with those offered by Drs. Jordan

and Hausmann, are not helpful because they do not provide any useful assessment of Plaintiff's functional limitations. Nevertheless, Dr. Smallman's statement that Plaintiff's lifestyle would involve only "sedentary activities," appears to be consistent with the assessed RFC for sedentary work, with additional limitations. Accordingly, any error caused by the ALJ's failure to address these statements by Dr. Smallman was harmless. *See Hanchett v. Colvin*, 198 F. Supp. 3d 252, 662-63 (W.D.N.Y. 2016) ("Although the ALJ did not assign any specific weight to the 'other source' opinion of LMSW Faraco, any error (and the Court does not conclude there was one) is harmless because the Court is able to glean the ALJ's reasoning with regard to LMSW Faraco's opinion based on his detailed analysis of Dr. Kashin's identical opinion."); *Skupien v. Colvin*, No. 13-CV-403S, 2014 WL 3533425, at *4 (W.D.N.Y. July 16, 2014) ("It is true that courts have found an ALJ's failure to consider a medical source's opinion to be harmless error where 'an analysis of weight by the ALJ would not have affected the outcome.' Harmless error has been found, for example, where the report the ALJ did not consider was consistent with all the other medical testimony he did consider.") (citations omitted); *Wallace v. Commissioner*, No. 5:11-cv-26, 2012 WL 461809, at *4 (D. Vt. Jan. 10, 2012) (where the plaintiff asserted that the ALJ failed to adequately consider and weigh the opinions of several of Plaintiff's treating and non-treading medical sources, any error

was harmless, because the record supported the ALJ's ultimate conclusions regarding those medical opinions), *adopted*, 2012 WL 461816 (D. Vt. Feb. 13, 2012). Accordingly, remand is not warranted on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket No. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        S/Michael A. Telesca
                                        _____
                                        HONORABLE MICHAEL A. TELESCA
                                        United States District Judge

Dated:    January 2, 2020
            Rochester, New York